UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ROBIN C. MANLEY

        Plaintiff,

v.                5:06-CV-620 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## DECISION AND ORDER

Robin C. Manley ("Plaintiff") brings this suit under section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. section 405(g), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for benefits. For the reasons discussed below, the Court affirms the Commissioner's decision.

**I. FACTS**

  **A. Procedural History**

Plaintiff applied for Social Security Disability and Supplemental Security Income benefits on February 2, 2004. On April 20, 2004, the applications were denied. On June 23, 2004, Plaintiff filed an untimely request for a hearing. After demonstrating good cause for the late filing of her request for a hearing, a video teleconference hearing was held before an Administrative Law Judge ("ALJ") on November 9, 2005.

In a decision dated December 2, 2005, the ALJ found that Plaintiff was not disabled. On March 18, 2006, the Appeals Council denied the request for review. Plaintiff commenced the

1

present action on May 19, 2006 seeking review of the Commissioner's decision.  See Complaint (Dkt. No. 1).

**B.     Medical History**

Plaintiff was born on January 17, 1962.  She initially applied for Supplemental Security Income and Disability Insurance Benefits on February 2, 2004.  T 40.[1]  She has a high school diploma, but no further education beyond high school.  Id. at 252.  She has past relevant work as a cashier, fast food worker, packer, and circuit board maker.  Id. at 253-55.  In 2003, Plaintiff reported earning $314.13 for the year.  Id. at 18.

Plaintiff alleges disability due to a torn right rotator cuff, depression, and asthma.  In March of 2002, Plaintiff sustained an injury to her right shoulder while moving boxes at work.  Notwithstanding the injury, Plaintiff continued to work.  T 157-58.  In May of 2002, while carrying a box of tomatoes, Plaintiff's arm gave way and she was taken to the Emergency Room.  Id. at 134.

Plaintiff was referred to Dr. Reuben J. Washington.  T 157.  On June 3, 2002, Dr. Washington found Plaintiff to have a strain of the right shoulder with tendinitis and degenerative joint disease of the right AC joint.  Id. at 158.  Dr. Washington prescribed a course of physical therapy.  Id.  A follow-up exam on June 24 revealed that Plaintiff continued to experience pain.  Id.  Dr. Washington treated Plaintiff with injections of Aristospan and Marcaine, which did not prove to be helpful.  Id. at 159.  Dr. Washington ordered an MRI, which revealed impingement syndrome secondary to degenerative changes to the right AC joint.  Id.  In September 2002, Dr. Washington performed decompression surgery on Plaintiff's right shoulder, followed by physical therapy.  Id.  Dr. Washington opined that Plaintiff was "making very good progress with her physical therapy

---

[1] Citations to "T" refer to the Administrative Transcript.  Dkt. No. 4.

after her surgery" and released her for work on December 8, 2002. Id. Plaintiff returned to Dr. Washington complaining of some pain after returning to work. Plaintiff also complained of numbness and tingling in her fingers. Plaintiff was not seen by Dr. Washington after January 30, 2003. Id.

On February 19, 2003, Plaintiff was treated by Dr. Mark J. Costenbader. T 100. Dr. Costenbader performed an Arthrogram of the Plaintiff's right shoulder, which revealed a full thickness rotator cuff tear. Id. at 101. In October of 2003, Dr. Costenbader performed a right shoulder arthroscopy. Id. at 104. As of March 2004, Plaintiff's physical therapist concluded that Plaintiff "has progressed well," but noted that she continued to complain of pain. Id. at 108. It was noted that Plaintiff did not "want us to use modalities for pain because the pain is not that bad." Id. Plaintiff was prescribed an exercise program to help improve her range of motion. Id. Her range of motion was found to have "improved but is limited due to end range pain." Id.

Plaintiff was treated by Dr. Helen Wong from April 2004 through November 2005. Dr. Wong noted that the Plaintiff continued to have pain in her right shoulder, despite the two previous surgeries. See generally T 202-19. Dr. Wong recommended that Plaintiff continue with physical therapy and to continue taking Bextra, Flexeril, and Darvocet to manage her pain. Id. at 217, 219. At her January 14, 2005 visit, Plaintiff reported experiencing pain. Id. at 213. Dr. Wong recommended surgery. Id. Dr. Wong performed a right shoulder arthroscopy and debridement. Id. at 208. During the operation, Dr. Wong found the labrum to be intact, the biceps to be intact, evidence "of a minimal partial rotator cuff tear on the joint surface which is tagged," no full extension of the bursal site, an adequate previous acromioplasty, and "small calcification of the AC joint resection area." Id. Post surgery, Plaintiff continued to complain of right shoulder pain. Id. at

205. Dr. Wong prescribed a Transcutaneous Electrical Nerve Stimulation ("TENS") Unit for home use. Id. Dr. Wong's medical assessment, dated November 11, 2005, noted that Plaintiff could only occasionally lift and carry ten pounds, could stand and walk two hours in an eight hour work day, and could sit six hours in an eight hour work day. Id. at 231-32. Dr. Wong found that Plaintiff could occasionally use her right hand and frequently use her left hand for fine manipulation, could frequently use her left hand for simple grasping, could frequently feel, and could occasionally balance and stoop. Id. at 232-33. Dr. Wong found that Plaintiff could never kneel, crouch, crawl, climb, reach, push or pull. Id. at 233.

Plaintiff was treated by LCSW Catherine Bump and Dr. Royle Miralles at the Wayne Community Counseling Center ("WCCC") from September 2002 through November 2002, and again from May 2004 through January 2006. T 248. Plaintiff was diagnosed as having a depression disorder not otherwise specified. Id. The report from Ms. Bump and Dr. Miralles, dated January 23, 2006, noted "symptoms of sadness, anger, suicidal thoughts, lack of interest in activities and inability to sleep" related to Plaintiff's shoulder injury. Id. Ms. Bump and Dr. Miralles opined that Plaintiff's depression is a result of the pain from her shoulder injury and her "inability to do everyday activities and frustration that she can't work." Id. In an assessment dated November 4, 2005, Ms. Bump opined that the Plaintiff "would have difficulty in any job relating with others or work that increased her pain level." Id. at 228. Additionally, this assessment noted Plaintiff's "many medical limitations" and that Plaintiff's medications might affect her memory and thought organization. Id.

On March 24, 2004, Dr. Sandra Boehlert performed a consultative orthopedic examination of Plaintiff. T 185-88. Plaintiff complained of shoulder pain and noted a history of asthma. Id. at

185. Plaintiff was found to engage in numerous activities of daily living, including "cooking, cleaning, laundry, and shopping with help from her husband as she is unable to do any heavy lifting because she has pain and her husband also helps her with personal hygiene." Id. at 186. Upon examination, Plaintiff's gait was found to be normal. She was able to fully squat and walk on heels and toes without difficulty. Her stance was normal. She required no assistance getting on or off the examining table. She was able to rise from a chair without difficulty. Plaintiff's hand and finger dexterity was found to be intact, with full grip strength bilaterally. With respect to her cervical spine, Plaintiff was noted to have full flexion, extension, lateral flexion, and rotary movements bilaterally. Id. at 187. The right shoulder was noted to have

> limited forward elevation to 140° and abduction to 135°. There is normal adduction and internal/external rotation. The left shoulder has full ROM. Full ROM of elbows, forearms, and wrists bilaterally. No joint inflammation, effusion, or instability. The right shoulder is tender to palpation. Strength 5/5 in proximal and distal muscles. No muscle atrophy. No sensory abnormality. Reflexes physiologic and equal.

Id. at 187. Dr. Boehlert's diagnosis was "[r]ight shoulder pain with mild decreased range of motion, status/post rotator cuff repair times 2." Id. at 188. Plaintiff's prognosis was "fair." Id. It was concluded that "[t]he right upper extremity has mild limitation to lifting above the shoulder level." Id.

Because Plaintiff was injured at work, she was receiving workers' compensation benefits. A workers' compensation independent medical exam was performed on Plaintiff on December 5, 2005 by Dr. Robert Dickerson. T 245-47. The examination of her right shoulder revealed a maximum of 90 degrees active anterior elevation, 70 degrees active lateral elevation, and 30 degree external rotation. Id. at 246. Dr. Dickerson concluded that Plaintiff had a functional impairment in "both shoulders in terms of limited ability for reaching and lifting with each arm." Id. at 247. Dr.

Dickerson also concluded that Plaintiff has a "moderate degree of disability with her shoulders." Id.

### C. Hearing Before the ALJ

A hearing was held before the ALJ at which time testimony was taken from Plaintiff and a vocational expert ("VE"). T 249-79. Plaintiff testified that she could comfortably sit for ten to twenty minutes at a time, that she should stand for "a couple of hours at the most," that she could lift ten pounds, and she could walk 100 yards without shortness of breath. Id. at 264-65, 269-70. Plaintiff testified to having significant pain. Id. at 258. Based on the hypothetical presented by the ALJ, the VE opined that Plaintiff could work as a surveillance system monitor, an assembler, a packer, or a companion. Id. at 274-76. Based on an additional hypothetical presented by Plaintiff's attorney, which included the assumptions of the inability to do any type of fine manipulation with the dominant hand, a poor ability to concentrate, stay on task, complete a workday and workweek, the VE opined that Plaintiff would be unable to work. Id. at 277-78.

The ALJ issued a decision on December 2, 2005 concluding that: (1) Plaintiff met the non-disability requirements for a period of disability insurance benefits through December 31, 2006; (2) Plaintiff had not engaged in substantial gainful activity since May 30, 2002; (3) Plaintiff suffers from the severe impairments of asthma, depression, and torn rotator cuff status post surgery; (4) Plaintiff does not have an impairment or combination of impairments that meets or exceeds one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulation No. 4; (5) Plaintiff has the residual functional capacity to perform a significant range of light work; (6) Plaintiff cannot perform her past relevant work; and (7) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform. T at 16-24. The ALJ noted that any light work would have to entail no

significant interaction with the general public, supervisors, or co-workers, no exposure to temperature or humidity extremes, no overhead reaching, no climbing, no balancing or stooping, and limited pushing or pulling. Id. at 21. Accordingly, the ALJ concluded that Plaintiff was not disabled. Id. at 24.

On March 18, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. T at 4-6. Plaintiff now seeks review of the Commissioner's determination.

## II.   STANDARD OF REVIEW

The court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the court must determine whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the court must determine whether the Commissioner's findings are supported by substantial evidence within the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 9; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). The Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which

must be "liberally applied;" its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48-49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44-45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Prior to applying this five-step framework, the ALJ must determine the date on which the claimant last met the Act's insured status requirement, whereby the claimant must establish disability prior to or on that date last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a); see also Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).

**III.   DISCUSSION**

**A.     Whether the ALJ Properly Addressed the Restrictions Noted in the Mental Assessment Contained in Exhibit 10F With the Vocational Expert By Way of a Supplemental Hypothetical**

Plaintiff contends that, although the ALJ gave considerable weight to the mental assessment from LCSW Catherine Bump and Dr. Royle Miralles, and the medical assessment from Dr. Helen Wong, the ALJ disregarded a number of significant restrictions listed in the medical reports and failed to include them in any supplemental hypothetical questions to the VE.  Plaintiff also argues that the VE's testimony is unreliable because it is not based on an accurate and complete hypothetical.

At the hearing, the ALJ posed the following hypothetical to the VE:

I'd like for you to assume a person who is 40 years of age on that date, has a 12th grade education and past relevant work as indicated, a right-handed individual suffering from various ailments.  She has some asthma, and the status post effects of three surgeries to her rotator cuff on the right, last one being in – I believe she indicated March or October of '05.  I think she said March.  Does cause her to have moderate pain and discomfort, shortness of breath on overexertion.  Has some decreased range of motion in that right upper extremity, and she has developed some depression as a result of her condition, somewhat relieved by her medication.  She also indicated she has some headaches associated with her condition, and as a result of her medication, she has some side effects from the medication.  They have some [inaudible] with one or a combination.  Would need jobs that are simple, routine, unskilled jobs, low stress in nature, concentration, and memory.  Jobs that allow her to sit/stand every 30 to 40 minutes if she needed it.  Avoid temperature and humidity extremes and overhead reaching, climbing, balancing and stooping.  And would be mildly to moderately limited as to push and pull in that right upper extremity, and jobs that allow her to avoid much interaction with the public, supervisors, or co-workers.  But would be able to [inaudible] work or sedentary or light work activities.

T 274-75.

Plaintiff argues that the hypothetical omits several of Plaintiff's limitations, but does not articulate what limitations were omitted from the hypothetical.  At the hearing, Plaintiff suggested the following additional factors to be considered by the VE – "[t]he person has no ability to perform

9

any repetitive motion with either upper extremity. Has poor ability to do any type of fine manipulation, especially with her dominant hand. And poor ability to concentrate, stay on task, complete a workday and workweek. . . ." T 277. To the extent Plaintiff argues that the ALJ should have posed these additional limitations to the VE and that the VE's opinion is unreliable for failure to consider these additional limitations, such an argument must be rejected. The record does not support a conclusion that Plaintiff has "no ability to perform any repetitive motion with either upper extremity" or has a "poor ability to do any type of fine manipulation, especially with her dominant hand." To the contrary, Plaintiff was found by her treating physician, Dr. Wong, to be able to engage in fine manipulation with her left hand frequently and occasionally with her right hand.[2] Id. at 232. She was also found to be able to grasp frequently with her left hand. Id. In her consultative examination, Dr. Boehlert found that Plaintiff's hand and finger dexterity was intact with full strength and the upper extremity to have only a mild limitation to lifting above the shoulder level. Id. at 187-88. Similarly, LCSW Bump found Plaintiff to be fair, rather than poor, in the area of concentration. Id. at 227. Because these additional limitations suggested by the Plaintiff are not supported by the record evidence, it was not improper for the ALJ to fail to consider them, and the hypothetical posed by the ALJ was supported by substantial evidence.

  **B. Whether the ALJ's Determination That Plaintiff Can Perform A Significant Range of Light Work is Supported by Substantial Evidence**

  Upon consideration of the record before it, the Court finds that the ALJ's determination that Plaintiff can perform a significant range of light work is supported by substantial evidence. This conclusion is supported by the disability report submitted by Plaintiff that she is able to get herself

---

  [2] "Frequently" is defined as from one-third to two-thirds of the time out of an eight hour workday. "Occasionally" is defined as very little to one-third of the time. T 231.

up in the morning and get dressed, let the dogs out, feed, water, and bathe two dogs and a cat, clean the house (albeit with help), do the laundry and the dishes, do the shopping (albeit with help), cook, and put herself to bed, but she does not do any heavy lifting. T 74-76. Plaintiff further reported that she takes care of the cooking, cleaning and laundry for her husband and child, and helps her mother with her bandages. Id. at 75. Plaintiff also reported that she is able to walk and drive a car and that she is able to go out on her own as long as she is careful. Id. at 76. Plaintiff stated that she socializes with others in person, on the phone, or via walkie-talkie daily and that she attends church once per week. Id. at 77.

The ALJ's conclusion is further supported by the medical evidence. In December 2002, Dr. Washington opined that Plaintiff was "making very good progress with her physical therapy after her surgery" and released her for work on December 8, 2002. T 159. This is consistent with the March 2004 report of Dr. James Mark stating that Plaintiff is able to work without restrictions and the January 2004 report of Dr. Costenbader that Plaintiff was making progress. Id. at 143-44. Plaintiff's most recent treating physician, Dr. Wong, determined that Plaintiff could occasionally lift and carry up to 10 pounds, that she could sit for 6 hours in an 8 hour workday, that she could sit up to 2 hours at a time without interruption, and that she could stand and walk up to 2 hours out of an 8 hour workday. Id. at 231-32. Dr. Wong reported that Plaintiff could frequently grasp and engage in fine manipulation with her left hand, and occasionally engage in fine manipulation with her right hand, provided Plaintiff was not reaching, pulling or pushing. Id. at 232.

There also is substantial evidence supporting the conclusion that Plaintiff's mental condition

did not preclude her from working. Dr. Miralles reported that Plaintiff was "fair"[3] in the areas of following work rules, relating to co-workers, interacting with supervisors, using judgment, and maintaining attention and concentration. T 227. She was noted to be "poor"[4] in the areas of dealing with the public, dealing with work stress, and functioning independently. Id. She was determined to be fair in the areas of understanding, remembering and carrying out complex job instructions; understanding, remembering and carrying out detailed, but not complex, job instructions; and understanding, remembering and carrying out simple job instructions. Id. at 228. Plaintiff also was found to be fair in the areas of maintaining personal appearance, behaving in an emotionally stable manner, and relating predictably in social situations. Id. She was found to be poor in the area of reliability. Id.

Further, the consultative examination supported a finding that Plaintiff retained an ability to work. Dr. Boehlert noted Plaintiff's pain and the limitations in her right shoulder, but concluded that she had only "mild decreased range of motion" and "mild limitation to lifting above the shoulder level." T 188. The workers' compensation independent medical examination similarly concluded that Plaintiff has "a moderate degree of disability with her shoulders" relating to "limited ability for reaching and lifting with each arm." Id. at 247.

Based on the medical evidence, the hearing testimony, and Plaintiff's report in support of her application for benefits, the Court finds that the ALJ's conclusion that Plaintiff has the residual functional capacity to perform a significant range of light work–limited to work that has a sit-stand

---

[3] "Fair" was defined to mean "[a]bility to function in this area is limited but satisfactory." "Poor" was defined to mean "[a]bility to function in this area is seriously limited but not precluded." T at 227.

[4] See n.3 *supra*.

option, that does not require significant interaction with the general public, supervisors, or co-workers, and that does not expose her to temperature and humidity extremes, overhead reaching, climbing, balancing, and stooping, and limited in pushing and pulling with her right upper extremity–is supported by substantial evidence.

### IV.   CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for judgment on the pleadings is **GRANTED**; Plaintiff's Motion for judgment on the pleadings is **DENIED**; and the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   August 03, 2009
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge